## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

_____

|  |  |
|---|---|
| In Re:<br>Donald R. Byrd and<br>Jolynn M. Byrd,<br><br>          Debtors. | Bankruptcy Case<br>No. 15-00970-JDP |

_____

|  |  |
|---|---|
| Noah G. Hillen,<br>Trustee,<br>        Plaintiff,<br><br>vs.<br><br>Dennis Dillon Auto Park &<br>Truck Center, Inc.,<br><br><br>        Defendant. | Adv. Proceeding<br>No. 15-6055-JDP |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Noah G. Hillen, Boise, Idaho, Chapter 7 Trustee, pro se.

Laura E. Burri, MORROW & FISCHER, Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION – 1

# I.

## *Introduction*

In this adversary proceeding, Plaintiff, chapter 7[1] trustee Noah G.

Hillen, seeks entry of a summary judgment on his claim against Defendant

Dennis Dillon Auto Park & Truck Center, Inc. ("Defendant").  The Court

heard oral argument on January 20, 2016, and after supplemental briefing,

took the motion under advisement.  Upon consideration of the parties'

briefs and arguments, as well as the applicable law, this Memorandum

disposes of the motion.

# II.

## *Facts*[2]

This adversary proceeding arises out of the bankruptcy case filed by

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]  These facts are taken from Plaintiff's Statement of Undisputed Facts supporting his summary judgment motion, Dkt. No. 8-2, Defendant's Statement of Undisputed Facts opposing the motion, Dkt. No. 10-2, as well as the exhibits attached to the affidavits of counsel, Dkt. Nos. 8-3, 10-1.  At the hearing, the parties acknowledged that these material facts are undisputed.

MEMORANDUM OF DECISION – 2

debtors Donald and Jolynn Byrd ("Debtors") on July 23, 2015.[3]

On April 18, 2015, Donald Byrd ("Byrd") purchased a new 2016 Kia Sorrento (the "Vehicle") from Defendant.[4]  He executed a Retail Installment Sale Contract ("Contract") which listed Byrd as the "Buyer" and Defendant as the "Creditor-Seller".  The Contract listed the "Total Sale Price" for the Vehicle as $46,921.68, and it confirmed that Byrd had received a $500 credit for his trade-in, a 1997 Chevrolet Suburban, a credit for a $1,400 "rebate," and that Byrd had made a $3,500 cash down payment.  Dkt. No. 8-3, Exh. A.  Byrd agreed to finance the remaining balance of the purchase price, including sales costs, which totaled $31,859.40, along with interest.  *Id.*  To do so, Byrd agreed to make 72 monthly payments to Defendant of $576.69 beginning on June 2, 2015.  *Id*. In particular, the Contract provided that:

By signing this contract, you [*i.e.*, Byrd] choose to buy the

_____

[3] *In re Donald Robert Byrd and Jolynn Marie Byrd*, Case No. 15-00970-JDP. When referring to this docket, the Court will use the designation "BK Dkt."

[4] Debtor Jolynn Byrd's name does not appear on any of the documents relating to the purchase of the Vehicle.

MEMORANDUM OF DECISION – 3

> vehicle on credit under the agreements on the front and back
> of this contract.  You agree to pay the Creditor-Seller
> (sometimes "we" or "us" in this contract) the Amount
> Financed and Finance Charge in U.S. funds according to the
> payment schedule below.

*Id*.

Byrd signed the Contract in three places.  In addition to placing his

signature at the bottom of the Contract in the space provided for the

Buyer, Byrd separately signed the Contract to acknowledge specific terms

controlling how the Contract could be changed, and in another place

acknowledging that he had read and understood the Contract.  *Id*.   The

Contract also provided that Byrd was "giving a security interest in the

vehicle being purchased."  *Id*.   A representative of Defendant signed a

separate provision of the Contract that stated that "Seller assigns its

interest in this contract to JP Morgan Chase Bank NA ["Chase Finance"]."

*Id*.[5]

At the same time he signed the Contract, Byrd also executed a

---

[5]  A variety of preprinted terms appeared on the reverse side of the
Contract.

MEMORANDUM OF DECISION – 4

separate form, a document given to him by Defendant entitled "Contract

Subject to Acceptance of Financing (Addendum to Retail Installment

Contract)" (the "Addendum").  Dkt. No. 8-3, Exh. B.  Byrd signed the

Addendum in the space for the "Buyer."  While there is a second signature

space on the Addendum for the "Dealer," no representative of Defendant

signed the Addendum.  *Id*.  The Addendum does not bear any letterhead,

logo, name, or symbol that identifies Defendant as the Dealer, or

otherwise.  *Id*.

The Addendum provided, *inter alia*, that the Contract would be

assigned to a lender for financing, but that if financing could not be

obtained, the Contract "shall be null and void," and that in such event,

Byrd would be obligated to return the Vehicle to Defendant "upon

[Defendant's] notice to you, whether written or oral, requesting return of

the [Vehicle]."  *Id.*  The Addendum included alternative provisions which

would control depending upon whether Byrd either returned the vehicle

to Defendant, or did not, following the Defendant's notice of the failure to

obtain financing.  *Id.*  The Addendum also provided that, if financing

MEMORANDUM OF DECISION – 5

could not be secured, "[n]othing in this [Addendum] allows [Byrd] to rescind the purchase of the Motor Vehicle . . . ." *Id*.

After the paperwork was completed, but before the financing of Byrd's purchase had been resolved, Defendant permitted Byrd to take possession of the Vehicle the same day he signed the Contract and the Addendum.

Because it was new, no certificate of title existed for the Vehicle. Instead, Defendant had a Certificate of Origin that indicated Defendant owned the Vehicle. Dkt. No. 10, Exh. C. The parties executed, and Defendant filed, a "Report of Sale and Application for Certificate of Title" with the Idaho Transportation Department, ("ITD"). Dkt. No. 10, Exh. H. This document listed Byrd as the "Owner," Chase as the "Primary Lienholder," and Defendant as "Dealer/Agency." Later, with the financing not yet approved, on May 15, 2015, Defendant also executed and filed a "Transitional Ownership Document" ("TOD") with the ITD. In the TOD, Defendant's agent certified that an ownership document was "not available for submission to ITD," but would be submitted within 90 days

MEMORANDUM OF DECISION – 6

of the date of sale.  Dkt. No. 10, Exh. I.

On May 5, 2015, Chase Finance notified Defendant that it needed a current pay stub from Byrd in order to approve financing.  Dkt. No. 10, Exh. G.  This request was apparently communicated by Defendant to Byrd, but he never provided the requested information.  As a result, Chase Finance eventually declined to provide financing to Byrd for the purchase of the Vehicle.

On June 30, 2015, Debtors made two payments to Defendant totaling $576.69.  Dkt. No. 10-1, Exh. D.  While these were likely intended to be initial monthly payments due from Byrd to Defendant on the Contract, Defendant recorded them on its books as an additional down payment on the Vehicle.

On July 23, 2015, Debtors filed a chapter 7 bankruptcy petition.  On that date, Debtors had possession of the Vehicle, no financing had been obtained for the Contract, Defendant had not been paid the balance due on the Contract, and Defendant had retained the Certificate of Origin for the

MEMORANDUM OF DECISION – 7

Vehicle.[6]

## III.
### *Analysis and Disposition*

**A. *The Summary Judgment Standard***

A motion for summary judgment is governed by Civil Rule 56(a),

which applies in adversary proceeding via Rule 7056.  That Civil Rule

provides:  "The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  In deciding a summary

judgment motion, the evidence and inferences therefrom must be viewed

in a light most favorable to the non-moving party.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Thorian v. Baro Enters., LLC (In re*

*Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho 2008).

**B. *The Parties' Arguments***

The adversary complaint filed by Plaintiff contains two counts.

_____

[6]  While Defendant originally sought stay relief to repossess and sell the
Vehicle,  BK Dkt. No. 15, Plaintiff objected, and the Court ultimately denied the
motion.  BK Dkt. Nos. 22, 33.  The parties eventually agreed that Plaintiff could
sell the Vehicle, with Defendant's lien to attach to the sale proceeds.

MEMORANDUM OF DECISION – 8

Count I seeks to avoid Defendant's security interest in the Vehicle

pursuant to § 544(a), and preserve it for the benefit of the bankruptcy

estate under § 550(a)(1).  Count II seeks a declaratory judgment that a non-

financed sale took place as contemplated by the Addendum, and thus, the

Vehicle is property of the bankruptcy estate, Defendant has no security

interest in the Vehicle, and Plaintiff may sell it for the benefit of the estate

creditors.

In his motion, Plaintiff seeks summary judgment only on Count I.

His theory is that, under the Contract, Byrd purchased the Vehicle and he

granted a security interest in it to Defendant, though Defendant never filed

the required documentation to properly perfect that security interest.

Thus, Plaintiff alleges, using his strong arm powers, he may avoid

Defendant's unperfected security interest, and preserve it for the benefit of

the estate.  In the alternative, if the Addendum, and not the Contract

controls, Plaintiff contends that Defendant has no security interest at all,

any interest Defendant has in the Vehicle is avoidable, and Defendant is

merely an unsecured creditor.

MEMORANDUM OF DECISION – 9

On the other hand, Defendant contends that the entire sale

transaction is null and void under the terms of the Contract and

Addendum.  As a result, as provided in the Certificate of Origin,

Defendant insists it is the owner of the Vehicle and Byrd and Plaintiff have

no rights in it.

**C.** *Disposition of the Issues*

    **1.  The Vehicle is property of the bankruptcy estate**.

Under these facts, Byrd acquired an interest in the Vehicle such that

it became property of Debtors' bankruptcy estate.

Under Idaho law, ownership of a motor vehicle is usually

determined by reference to the title certificate issued by the ITD.  Indeed,

the Idaho motor vehicle title laws provide that "no person acquiring a

vehicle from the owner, whether the owner is a dealer or otherwise, shall

acquire any right, title, claim or interest in or to the vehicle until he has

issued to him a certificate of title to that vehicle . . . ."  Idaho Code § 49-503.

This Court has had several occasions to construe and apply this statute,

holding that, for bankruptcy purposes, the owner of a vehicle is the party

MEMORANDUM OF DECISION – 10

whose name appears on the title certificate.  *See e.g., In re Woods*, 386 B.R. 758, 762 (Bankr. D. Idaho 2008); *Hopkins v. Shradley (In re Shradley)*, 03.1 IBCR 7, 8 (Bankr. D. Idaho 2003).  Based upon this statute and case law, Defendant argues that, because there is no title certificate showing Byrd as the owner of the Vehicle, and because the only document that is "title-like"– the Certificate of Origin – lists Defendant as the owner, the Court's inquiry ends, and Defendant owns the Vehicle.

However, in advancing this position, Defendant ignores a second line of this Court's decisions addressing vehicle ownership in Idaho when no certificate of title for the vehicle has been issued.  In those cases, in the absence of a title certificate issued by ITD to settle the question, the Court has relied on other "indicia of ownership" to resolve competing claims to a motor vehicle.  *See Gugino v. Canyon Fin. of Boise, Inc. (In re Green)*, 09.2 IBCR 44, 45-46 (Bankr. D. Idaho 2009) (sufficient indicia of ownership where creditor filed application for title listing debtor as owner and creditor as lienholder, but application was rejected due to discrepancy in odometer readings); *Rakozy v. Hunter (In re Hunter)*, 88 IBCR 46, 47-48

MEMORANDUM OF DECISION – 11

(Bankr. D. Idaho 1988) (sufficient indicia of ownership found in schedules and signature on back of title application that was never sent to ITD). Here, because there was is no title certificate issued by ITD for the Vehicle to prove ownership, what are the relevant indicia of ownership for the Vehicle?

First and foremost, the parties executed the Contract which carefully outlined the details of the parties' transaction, and their intent, concerning the Vehicle. In particular, the Contract clearly provided that Byrd was purchasing the Vehicle from Defendant. Consistent with this arrangement, it is significant that possession of the Vehicle was transferred from Defendant to Byrd at the time the purchase contracts were signed, and that Debtors remained in possession of the Vehicle through the bankruptcy petition date. It is also important that, as revealed in the Contract, Byrd has paid Defendant a total of $4,576.69 toward the purchase of the Vehicle, including two monthly installment payments. Finally, the Court can only wonder, if it intended to retain ownership of the Vehicle, why Defendant submitted a "Report of Sale and Application

MEMORANDUM OF DECISION – 12

for Certificate of Title," to ITD which listed Byrd as the "Owner" of the

Vehicle.

Under the Idaho case law, that Defendant retained the Certificate of

Origin showing that it owned the Vehicle is not sufficient to overcome

these indicia and to prove ownership.  Instead, all things considered, the

facts and evidence clearly that the parties intended that Byrd be the owner

of the Vehicle.  Accordingly, the Vehicle became property of the

bankruptcy estate when the bankruptcy petition was filed.  *Canyon Fin.*,

09.2 IBCR at 45-46.

### 2.  The Contract.

Plaintiff contends that the Contract evidences a sale of the Vehicle

from Defendant to Byrd on credit, together with the grant of a security

interest to Defendant to secure payment of the balance of the purchase

price.  Plaintiff argues that because that security interest was not properly

perfected on the date Debtors filed the bankruptcy petition, Defendant's

interest in the Vehicle is vulnerable to Plaintiff's avoiding powers under

§ 544(a).  Plaintiff is correct.

MEMORANDUM OF DECISION – 13

*a. The Language of the Contract*.

The Contract identified Byrd as the "Buyer," and Defendant as the "Creditor-Seller."  It provided that Byrd was purchasing the Vehicle, and that to do so, he had made a cash down payment, received credits for his trade-in and a rebate, and that he agreed to pay "Creditor-Seller . . . the Amount Financed and Finance Charge in U.S. funds according to the payment schedule" listed in the Contract.  It further provided that Byrd was "giving a security interest in the vehicle being purchased."[7]  Nothing in the text of the Contract makes the sale of the Vehicle contingent on Byrd obtaining financing.  Because the unambiguous terms of the Contract make clear that Byrd purchased the Vehicle from Defendant, obligated Byrd to pay Defendant the amount financed, and granted Defendant a security interest in the Vehicle, the Court concludes as a matter of law that

---

[7] If this provision were not clear enough, there is a "boilerplate" provision on the second page of the Contract (¶ 2c) which again provided that Byrd, as the buyer, granted Defendant a security interest in the vehicle, in any money or goods received for the vehicle, in insurance or maintenance contracts concerning the Vehicle that Defendant financed for Byrd, and in all proceeds from insurance or maintenance contracts financed, including any premium refunds.

MEMORANDUM OF DECISION – 14

Defendant's interest in the Vehicle was limited to a security interest. *See* Idaho Code § 28-2-401(1) ("Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."); *In re Samuels & Co.*, 526 F.2d 1238, 1246 (5th Cir. 1976) (UCC § 2-401(1) "specifically limits the seller's ability to reserve title once he has voluntarily surrendered possession to the buyer.").

### b. *Perfection of Defendant's Security Interest*.

The security interest granted by Byrd to Defendant under the Contract was required to be perfected under Idaho law prior to Debtors' bankruptcy petition day in order for Defendant to prevail as against Plaintiff invoking the trustee's § 544(a) strong arm powers. Idaho Code § 28-9-109(1) (applying Idaho UCC article 9 to "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract"); Idaho Code § 28-9-110 (providing that article 9 applies to a sale under article 2, and that filing is not required to perfect a security interest until buyer obtains possession of the goods); *Whitworth v. Krueger*, 558 P.2d

MEMORANDUM OF DECISION – 15

1026, 1029 (Idaho 1976) ("having parted with possession of the goods and

not having perfected a security interest in the goods by filing, the

[unperfected creditor's] interest in the goods would be subordinate to the

[perfected creditor]"); *In re Clean Burn Fuels, LLC,* 492 B.R. 445, 458 (Bankr.

M.D.N.C. 2013) ("[O]nce the debtor obtains possession of the goods, an

Article 2 creditor's claim is no different from the claim of any other

consensual creditor under Article 9 and is dependent upon the traditional

rules of attachment and perfection."); § 544(a)(1), (2) (empowering a

trustee to avoid any interest in property of the estate that is voidable by a

judgment or execution lien creditor of the debtor).

In Idaho, there is but one method to perfect a security interest in a

motor vehicle:  the secured party must comply with the lien notation

requirements of the Idaho motor vehicle certificate of title laws.  Idaho

Code § 49-510(1) ("[n]o lien or encumbrance on any vehicle registered

under the laws of this state . . . shall be perfected as against creditors or

subsequent purchasers or encumbrancers without notice until the holder

of the lien or encumbrance . . . has complied with the requirements of

MEMORANDUM OF DECISION – 16

section 49-504, Idaho Code, and has filed the properly completed title

application and all required supporting documents with the [ITD] . . . .");

*Canyon Fin.*, 09.2 IBCR at 46.  Here, it is undisputed that Defendant did not

provide the proper documentation to ITD to obtain the issuance of a

certificate of title for the Vehicle showing Byrd as the owner with

Defendant's lien noted thereon.  Instead, it appears undisputed that

Defendant intended that some other creditor would finance Byrd's

purchase of the Vehicle, and that Defendant elected to await approval of

that financing to complete the title issuance/lien notation process.

Defendant's decision to forego issuance of a title certificate had

consequences.

Defendant argues that its rights were protected because it filed  a

timely[8] TOD with the ITD.  But Defendant's resort to a TOD was

inappropriate under these facts.

Under the Idaho statutes, the purpose of a TOD "is to enable [a]

_____

[8]  Idaho Code § 49-527(1) provides that a transitional ownership document
must be filed with the ITD within 30 days of the sale date.

MEMORANDUM OF DECISION – 17

security interest to be perfected [in a motor vehicle] in a timely manner

*when the primary ownership document is not available.*  The transitional

ownership document serves to perfect a lien against creditors or

subsequent purchasers."  Idaho Code § 49-527 (emphasis added).  Idaho

Code § 49-528 reiterates the circumstances for the proper use of a TOD:

"[a] transitional ownership document is acceptable as evidence of

ownership *only if the primary ownership document. . . is not in the possession of*

*the selling dealer . . . at the time the transitional ownership document is submitted*

*to the department*; and . . . to the best of the knowledge of the selling dealer

. . . , will not be available for submission to the department within thirty

(30) days of the date of sale . . . ."  (Emphasis added).[9]  "Primary

ownership documents" include existing certificates of title for used

vehicles, or the manufacturer's certificate or statement of origin for new

vehicles.  *Canyon Fin.*, 09.2 IBCR at 47 (citing Idaho Code § 49-504(1), (3)).

---

[9]  Apart from the statutes, the instructions printed on the Idaho official
form, as used in this case, indicate that a TOD "[m]ay <u>not</u> be used if the primary
ownership document (i.e. title, manufacturer's certificate of origin) is available or
if there is no lien).  *See* TOD,Dkt. No. 10, Exh. I (emphasis in original).

MEMORANDUM OF DECISION – 18

Here, it is undisputed that Defendant was at all relevant times in
possession of the Certificate of Origin for the Vehicle, and could have
submitted it with the title application it filed and had its security interest
noted on the initial certificate of title for the Vehicle.  Instead, Defendant
filed a title application, and indicated therein that Chase Finance would be
the lienholder, not Defendant.  In doing so, Defendant sought to employ
the TOD process to perfect a security interest in the Vehicle under
circumstances where that was clearly inappropriate.  This Court has
previously held that when the primary ownership document was available
and submitted to the ITD, along with an application for title, the
transitional-ownership-document method of perfection of a lien is not
proper.  *Canyon Fin.*, 09.2 IBCR at 47.

Moreover, even if Defendant's submission of a TOD to the ITD was
sanctioned by the statutes under these facts, "[a] primary ownership
document must be received by [the ITD] within ninety (90) calendar days
from the date of the security agreement or contract . . . ."  Idaho Code § 49-
527(4).  To emphasize the temporary nature of lien perfection through use

MEMORANDUM OF DECISION – 19

of a TOD, the statutes warn that the TOD process "is not intended to

supersede the requirements of section 49-504, Idaho Code, [*i.e.*, the usual

application for certificate of title process), but rather to provide an

alternative method of lien perfection."  Idaho Code § 49-527(3).  To dispel

any doubts about the limited utility of a TOD, the official form, on its face,

admonishes:  "This transitional ownership document and any lien

perfection based on this document shall be invalidated if [the primary

ownership document] is not received by the 90 calendar day deadline."

TOD,Dkt. No. 10, Exh. I.

Here, the parties executed the Contract on April 18, 2015.  Even if

Defendant could have used a TOD to temporarily perfect a security

interest in the Vehicle, Defendant was obliged to submit the Certificate of

Origin for the Vehicle to the ITD, and to have a permanent title certificate

issued noting its lien, within 90 days of that sale date.  It is undisputed that

Defendant did not comply with that requirement within the 90-day limit

or at any time prior to the filing of Debtors' bankruptcy petition.

Therefore, even if Defendant may have temporarily held a perfected

MEMORANDUM OF DECISION – 20

security interest in the Vehicle under the TOD, that perfection was invalid on bankruptcy day.

Accordingly, assuming the parties' rights are governed by the Contract, a sale of the Vehicle occurred, Byrd became the owner, and Defendant held an unperfected security interest in the Vehicle. Based on the undisputed facts, as a matter of law, Plaintiff is entitled to a summary judgment in his favor under § 544(a), avoiding Defendant's unperfected security interest in the Vehicle, and preserving it for the benefit of the bankruptcy estate under § 550(a)(1).

### 3. The Addendum.

Defendant contends, however, that the Contract is not the controlling document. At the same time he signed the Contract, Byrd executed a second document, the Addendum. Defendant argues that the Addendum not only rendered the Contract "null and void," but that it establishes Defendant's claim of ownership to the Vehicle. Plaintiff disagrees and argues that, even if the Addendum governs, it does not save Defendant. Assuming the Addendum is effective in this case, how does it

MEMORANDUM OF DECISION – 21

impact the parties' rights?

### a. *The Language of the Addendum.*

The text of the Addendum explained the consequences if financing for the purchase was not obtained.  It plainly provided that, if no financing was obtained, the Contract was "null and void," and that the  buyer must return the vehicle "upon Dealer's notice to you, whether written or oral, requesting return of the Motor Vehicle."

According to the Addendum, when no financing was approved, Defendant was required to provide notice to Byrd demanding return of the Vehicle.  But no evidence was given to the Court to show that such notice was ever given, or if it was, when it occurred.  However, in deciding a summary judgment motion, the Court should draw reasonable inferences in favor of the non-moving party, in this case, Defendant. *Anderson*, 477 U.S. at 255; *Thorian,* 387 B.R. at 61.

The Addendum specifies alternative outcomes depending upon whether the Vehicle was returned to Defendant within one business day of the demand, or sometime later.  There are three possible scenarios the

MEMORANDUM OF DECISION – 22

Court could infer in this case:  1) that notice and demand was given by

Defendant to Byrd, and that he complied by returning the Vehicle within

one business day; 2) that notice was given, but the Vehicle was not

returned within one business day; or 3) that demand was never given by

Defendant to Byrd.  Defendant loses under any of these scenarios.

First, when no financing was obtained, the Court could assume that

Defendant demanded that Byrd return the Vehicle, and that Byrd indeed

did so within one business day.  In that case, the Addendum provided that

Byrd would not be liable to Defendant for the full purchase price of the

Vehicle, but instead would only have to pay Defendant for certain

incidentals, such as damage, mileage, cleaning, etc.  However, the Court

declines to draw that inference because it is undisputed that Debtors

remained in possession of the Vehicle when they filed their bankruptcy

petition.[10]

---

[10]  That such an inference is unjustified is further evidenced by the fact
that Defendant filed a proof of claim in the bankruptcy case asserting its right to
recover the full amount of the unpaid purchase price, $ 31,895.04, rather than
merely incidental expenses.  Claims Reg. No. 3.

MEMORANDUM OF DECISION – 23

If, instead, Defendant gave Byrd notice and the Vehicle was returned to Defendant later than one business day after that notice, a second alternative in the Addendum was triggered.  This provision would treat the Vehicle as goods delivered not subject to any financing, and Byrd agreed to pay the Defendant the full purchase price as provided for in the "purchase order."[11]  In such instance, because the Contract was "null and void," only the language of the Addendum remains to govern Defendant's unfinanced purchase of the Vehicle.[12]  Unless there is something in the

---

[11]  No document titled "purchase order" was submitted to the Court.

[12]  Indeed, this is what Defendant intended.  Near the signature line, the Addendum provides:

> YOU AND THE DEALER HAVE AGREED THAT THE MOTOR VEHICLE WILL BE DELIVERED TO YOU PRIOR TO THE PURCHASE PRICE BEING PAID IN FULL.  IF FINANCING CANNOT BE ARRANGED ON THE TERMS AND WITHIN THE TIME PERIOD AGREED UPON IN THE MOTOR VEHICLE PURCHASE CONTRACT, THE CONTRACT IS NULL AND VOID. IN THE EVENT THAT THE CONTRACT BECOMES NULL AND VOID YOU SHALL BE SUBJECT TO THE TERMS, CONDITIONS AND RESPONSIBILITIES SPECIFIED ABOVE.

Dkt. No. 8-3, Exh. B (emphasis in original).

MEMORANDUM OF DECISION – 24

Addendum which creates a security interest in Defendant's favor,[13] Byrd

owes Defendant the unpaid purchase price, and Defendant holds an

unsecured claim in Debtors' bankruptcy case.

Finally, the Court could assume that Defendant gave Byrd no notice

regarding the failure to obtain financing or demand that the Vehicle be

returned.  If so, Defendant contends that the parties should be treated as if

there was no sale.  And, following this logic, because Defendant's name is

on the Certificate of Origin as the owner, Defendant owns the Vehicle

outright.  Plaintiff disagrees with this analysis of events, arguing that a

sale of the Vehicle indeed occurred, and that Defendant's interest in the

Vehicle is limited to, at best, an  unperfected security interest, or at worst, a

mere unsecured claim against Byrd for the balance due on the Contract.

If there are no sales documents, or if the documents fail to govern

the situation, Idaho statutes fill the void.  In this instance, under Idaho's

version of the Uniform Commercial Code regarding sales, a sale of the

---

[13]  Defendant does not dispute that the Addendum does not create a
security interest.  Defendant's Supp.Br. in Opp.to Plaintiff's Motion for Summary
Judgment, Dkt. No. 13, pp. 4-5.

MEMORANDUM OF DECISION – 25

Vehicle occurred, and Defendant holds an unsecured claim against Byrd.

### b. Sales and Creation of a Security Interest Under Idaho Law

The nature and extent of security interests are determined by state law. *Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944 F.2d 500, 502 (9th Cir. 1991). Unless otherwise explicitly agreed, "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place . . . ." Idaho Code § 28-2-401(2). Moreover, Idaho Code § 28-2-401(1) provides that, "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." Thus, Defendant cannot successfully argue that no sale occurred if the Contract is deemed void by the Addendum. Rather, "title" passed to Byrd at the time Defendant physically delivered the Vehicle to his possession.

Furthermore, once the buyer obtains possession of the goods, any

MEMORANDUM OF DECISION – 26

security interest arising under Idaho Code § 28-2-401 is subject to the

requirements of chapter 9 of title 28.  Idaho Code § 28-9-110.  Because Byrd

obtained possession of the Vehicle on the same day the documents were

signed, chapter 9 applies.  That chapter provides that an enforceable

security interest attaches only if:

> (1) Value has been given;
> (2) The debtor has rights in the collateral or the power to transfer
> rights in the collateral to a secured party; and
> (3) One (1) of the following conditions is met:
>> (A) the debtor has authenticated a security agreement that
>> provides a description of the collateral and, if the security
>> interest covers timber to be cut, a description of the land
>> concerned;
>> (B) the collateral is not a certificated security and is in the
>> possession of the secured party under section 28-9-313
>> pursuant to the debtor's security agreement;
>> (C) the collateral is a certificated security in registered form
>> and the security certificate has been delivered to the secured
>> party under section 28-8-301 pursuant to the debtor's security
>> agreement; or
>> (D) the collateral is deposit accounts, electronic chattel paper,
>> investment property, letter of credit rights, or electronic
>> documents, and the secured party has control under section
>> 28-7-106, 28-9-104, 28-9-105, 28-9-106 or 28-9-107 pursuant to
>> the debtor's security agreement.

Idaho Code § 28-9-203.


MEMORANDUM OF DECISION – 27

In this case, the Addendum does not contain a description of the

Vehicle, nor does it contain any language creating a security interest in

favor of Defendant.  And of course, Defendant made no effort to retain

possession of the Vehicle in order to effectuate a security interest.

Because the Addendum did not create an enforceable security

interest, and because Defendant permitted Byrd to take possession of the

Vehicle immediately, a sale occurred and Defendant's "only right as an

unpaid seller without a legal security interest in the [Vehicle] was to sue

[Byrd] for the amount still due on the sale pursuant to Idaho Code § 28-2-

709(1)(a)."  *State v. Bennett*, 246 P.3d 387, 389 (Idaho 2010).  As such,

Plaintiff's strong arm powers under § 544(a) give him precedence over

Defendant's unsecured status.

**IV.**
*Conclusion*

No matter how the Court characterizes the Contract, the

Addendum, and regardless of the inferences the Court draws from the

undisputed facts, Defendant's interest in the Vehicle is avoidable by

MEMORANDUM OF DECISION – 28

Plaintiff, and Defendant is an unsecured creditor for the balance due on

the purchase price.  Accordingly, Plaintiff's motion for summary judgment

is granted.  A separate order will be entered.

Dated:  February 16, 2016

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 29